IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NĀ POʻE KŌKUA, a Hawaii nonprofit corporation, on behalf of native Hawaiians,<br><br>           Plaintiff,<br><br>    vs.<br><br>BANK OF AMERICA CORPORATION,<br><br>        Defendant. | CIV. NO. 22-00238-JMS-WRP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 29, WITH LEAVE TO AMEND |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 29, WITH LEAVE TO AMEND**

## I.  INTRODUCTION

Plaintiff Nā Poʻe Kōkua ("Plaintiff") filed a Complaint ("Complaint") against Defendant Bank of America Corporation ("Defendant")[1] on May 31, 2022. ECF No. 1.  Plaintiff is a "Hawaii nonprofit corporation, [suing] on behalf of native Hawaiians," "whose stated purpose is to assist native Hawaiians with housing and related matters."  ECF No. 1 at PageID.1, PageID.11.

---

[1] Certain actions alleged in the Complaint were purportedly committed by Defendant Bank of America Corporation's predecessor entities.  Although there may be legal distinctions between Bank of America Corporation and its predecessor entities that are relevant to this case, for purposes of Defendant's Motion to Dismiss, the court treats Bank of America Corporation and its predecessor entities as one and the same, under the title of "Defendant."  *See* ECF No. 29-1 at PageID.441, n.1 (Bank of America Corporation's Motion to Dismiss) (using "BAC" as shorthand for Bank of America Corporation and its predecessors).

Defendant filed a Motion to Dismiss on August 18, 2022.  ECF No. 29.  Plaintiff then requested that the court convert the Motion to Dismiss into a Motion for Summary Judgment or, alternatively, give Plaintiff leave to conduct discovery before responding to the Motion to Dismiss.  ECF No. 32.  The court denied Plaintiff's requests, and instead ruled that it will consider only the facial challenges in the Motion to Dismiss and disregard any factual challenges, without prejudice.  ECF No. 41.

Considering only the facial challenges, Defendant argues that Plaintiff lacks standing under Federal Rule of Civil Procedure 12(b)(1) and that Plaintiff's claims are time-barred under Rule 12(b)(6).  The court finds that Plaintiff lacks standing under Rule 12(b)(1) and GRANTS Defendant's Motion to Dismiss, while also granting Plaintiff LEAVE TO AMEND its Complaint.

Because the court dismisses Plaintiff's Complaint under Rule 12(b)(1), it lacks jurisdiction to analyze the timeliness of the Complaint under Rule 12(b)(6).[2]

---

[2] "In a long and venerable line of cases, [the Supreme Court] has held that, without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 84 (1998).  "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 7 Wall. 506, 514 (1868).  The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.Ry. Co. v. Swan,* 111 U.S. 379, 382 (1884).

## II. <u>BACKGROUND</u>

Plaintiff alleges that, in 1994, Defendant made a "$150 Million FHA-247 origin[al] loan commitment to federal banking regulators . . . for the benefit of native Hawaiians, which was due to be completed in 1998, and remains unfulfilled."  ECF No. 1 at PageID.3.  That "loan commitment" was in fact a "condition" of federal banking regulators' approving Defendant's acquisition of a Hawaii-based bank in 1994.  *Id.* at PageID.5.  Plaintiff alleges that Defendant took further actions reaffirming the loan commitment from 1994 to 2003.  *See id.* at PageID.24–31.

But beginning in 2003 and until at least 2020, Defendant allegedly disseminated "false and fraudulent statements, representations, and accountings" in a "scheme to defraud native Hawaiians" from FHA-247 home ownership and other benefits associated with the loan agreement.  *Id.* at PageID.16.  For example, the Complaint highlights a 2007 letter from "Ben Henderson," former Deputy Chairman of the Hawaiian Homes Commission, "formally acknowledg[ing] that the $150,000,000 commitment ha[d] been met by [Defendant]" based on a "revised summary [financial] report" provided by Defendant.  *Id.* at PageID.44.

Plaintiff claims that the revised summary report, among other communications, was fraudulent, thereby constituting a predicate act of mail and wire fraud for Plaintiff's civil Racketeer Influenced Corrupt Organizations Act

("RICO") claim.  *Id.* at PageID.46–47, PageID.73–93.  Plaintiff also claims that Ben Henderson and Micah Kane, former Chairman of the Hawaiian Homes Commission, were state actors who committed unauthorized actions in violation of native Hawaiian's civil rights, essentially supporting Plaintiff's claim under 42 U.S.C. § 1983.  *Id.* at PageID.93–98.  Lastly, Plaintiff claims that Defendant's $150,000,000 commitment to fund FHA-247 loans is the "Trust Res" of a "Constructive Trust" that is currently active and executory, administered by the State of Hawaii as Trustee for the benefit of native Hawaiians.  *Id.* at PageID.100-105.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction, including claims for which a plaintiff lacks standing.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  The court may determine jurisdiction on a motion to dismiss under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

Pursuant to Rule 12(b)(1), a party may make a jurisdictional attack that is either facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack, as in this motion, occurs when the movant

"asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

## IV.  ANALYSIS

For Plaintiff to have standing for its RICO, § 1983, and Constructive Trust claims, it must be able to show with particularity how it was injured by Defendant's alleged failure to fulfill its original 1994 commitment of funding residential FHA-247 loans to native Hawaiians.  But such loans were intended to benefit native Hawaiians only, not nonprofit institutions.  And Plaintiff has failed to plead associational standing on behalf of its native Hawaiian participants. Plaintiff's pleading for organizational, or first-party, standing is also defective. Accordingly, the court lacks subject matter jurisdiction to hear this case as alleged in the Complaint.

### A.    Legal Framework

Subject-matter jurisdiction both grants and restricts the court's power, permitting it to handle only those cases and controversies it is authorized to hear. Accordingly, "[f]ederal courts are courts of limited jurisdiction," with authority

derived from the "Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Constitution limits federal court jurisdiction to "cases" or "controversies." U.S. CONST. art. III, § 2, cl. 1. And "to qualify as a case fit for federal-court adjudication, an actual controversy must" exist. *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997) (internal citation and quotation marks omitted).

Whether or not an actual controversy exists is a matter of standing, without which there can be no subject-matter jurisdiction. U.S. CONST. art. III, § 2, cl. 1. The Supreme Court has held that the "constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). First, the plaintiff "must have suffered an injury" that is "(a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Id* (internal citations and quotation marks omitted). Second, the injury must be traceable to the challenged action of the defendant, and not the result of "the independent action of some third party not before the court." *Id*. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (internal citations and quotation marks omitted).

"The essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a personal stake in the outcome of the controversy (as) to warrant his invocation of federal-court jurisdiction and to

justify exercise of the court's remedial powers on his behalf." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 260–61 (1977) (alteration in original) (internal citations and quotation marks omitted).

There are judicially self-imposed limits on the exercise of federal jurisdiction that implicate standing, including "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751 (1984).

There are, however, exceptions as to when one person or entity has standing to raise the grievances of another.  For example, in Hawaii, the state's Attorney General may bring certain suits in the name of the state on behalf of its citizens.[3]  *See* H.R.S. § 480-14.  A non-government entity may also bring suit on behalf of another through the doctrine of associational standing.  *See Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003).

While "associational standing" is a form of third-party standing, "organizational standing" is a type of first-party standing asserted by the association to sue in its own right as an independent injured entity.  *See Havens*

---

[3]  The State's authority to bring suit on behalf of its citizens has not been delegated, and Plaintiff affirmatively states that it "does not bring suit on behalf of the State" when attempting to sue on behalf of native Hawaiians.  ECF No. 43 at PageID.784.

*Realty Corp. v. Coleman*, 455 U.S. 363, 375 (1982).  Given the subtle differences and intricate nature of the jurisprudence between these two standards, the court recognizes that parties sometimes mistakenly conflate organizational and associational standing.  In an effort to clarify, the court first explains both tests and then addresses whether Plaintiff lacks standing.

### 1.     *Organizational Standing*

The Ninth Circuit has held that an organization has properly shown injury-in-fact "if it can demonstrate: (1) frustration of its organizational mission; *and* (2) diversion of its resources to combat the particular [conduct] in question."  *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (emphasis added).

The first prong, frustration of mission, requires the court to ask—what is the organization's mission and did defendant's alleged unlawful conduct frustrate that mission?  In *Smith*, for example, the Ninth Circuit found an organization's mission to be frustrated when its ultimate goal was to eliminate discrimination against individuals with disabilities, and any violation of the relevant accessibility law constituted a frustration of the organization's mission. *Id*.  Similarly, an organization's mission of promoting equal housing opportunities, as required by the FHA, was frustrated by the defendant's alleged FHA violations. *See Fair Hous. of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002).

The second prong requires an actual diversion, rather than a predetermined allocation, of the organization's resources. This prong is *not* satisfied when plaintiff organization is "simply going about their business as usual but [when plaintiff] had altered their resource allocation to combat the challenged practices." *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (citing internally to *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040–41 (9th Cir. 2015) (internal signals omitted)). In her *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC* concurrence, Judge Sandra Ikuta emphasized that this resource diversion should not be just "a setback to the organization's abstract social interests," but rather a "concrete and demonstrable injury to the organization's activities" to properly satisfy the Supreme Court's requirement that the "organization actually suffer a 'concrete and particularized injury.'" 666 F.3d 1216, 1226 (9th Cir. 2012) (citing internally to *Havens,* 455 U.S. at 379 and *Lujan,* 504 U.S. at 560; *see also Sierra Club v. Morton,* 405 U.S. 727, 738–39 (1972) (holding that an organization's abstract interest in a problem, without direct harm, is insufficient to establish standing).

### 2.      *Associational Standing*

Associational standing[4] permits an organization to "sue to redress its

members' injuries, even without a showing of injury to the association itself."

*United Food and Com. Workers Union Loc. 751 v. Brown Group, Inc.,* 517 U.S.

544, 552 (1996).  Three factors are required for associational standing:

> An association has standing to bring suit on behalf of its
> members when: (a) its members would otherwise have stood to
> sue in their own right; (b) the interests it seeks to protect are
> germane to the organization's purpose; *and* (c) neither the claim
> asserted, nor the relief requested requires the participation of
> individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Regarding the first prong, the "association must allege that its

members, or any one of them, are suffering immediate or threatened injury as a

result of the challenged action of the sort that would make out a justiciable case

had the members themselves brought suit . . .."  *United Food*, 517 U.S. at 552

(citing internally to *Warth v. Seldin,* 422 U.S. 490, 511 (1975)).

The second prong is intended to ensure that the association's members

receive effective representation.  The "demand that an association plaintiff be

organized for a purpose germane to the subject of its member's claim raises an

assurance that the association's litigators will themselves have a stake in the

---

[4]  Associational standing is sometimes referred to, interchangeably, as "representational
standing."  *See e.g., Pennel v. City of San Jose*, 485 U.S. 1, 7 n.3 (1988).

resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *United Food*, 517 U.S. at 555–56.  This does not require the entirety of the organization's members to be interested in the litigation's outcome. It is permissible for "the litigation strategy selected by the association [to] reflect the views of only a bare majority—or even an influential minority—of the full membership." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 289 (1986).

Under the third prong, "an association has standing only to seek relief that would not require the participation of its individual members." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (finding that the third prong was not satisfied where the complaint alleged "multiple variations" in payments to different individuals that the association was representing, requiring specific analysis and "extensive individual participation").  The general rule is that an association's claim for monetary damages run afoul of this third prong, because such claims involve individualized proof necessarily "requiring the participation of individual members of a lawsuit." *Hunt*, 432 U.S. at 343.[5]  Individual participation, however, "is not

---

[5] There is an exception to this general rule.  Specifically in the context of Congressional acts, the Supreme Court has clarified that the third prong of the *Hunt* test is a not a constitutional requirement, but rather a "prudential impediment."  *United Food*, 517 U.S. at 544.  Once an association has satisfied the first and second prongs, "assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity

(*continued . . .* )

normally necessary when an association seeks prospective or injunctive relief for its members," and indeed, associational standing has been upheld when such types of non-individualized forms relief are requested.  *United Food*, 517 U.S. at 544, 546.

## B.    Application

### 1.    *Organizational Standing*

Plaintiff has established the first prong of organizational standing but has failed to properly plead the second.  On the face of the Complaint, Plaintiff's ultimate goal of assisting native Hawaiians with housing was frustrated by Bank of America's failure to provide FHA-247 loans, thereby satisfying the first prong.  ECF No. 1 at PageID.24.  But the Complaint fails to allege an actual diversion— rather than a predetermined allocation—of Plaintiff's organizational resources to combat Defendant's conduct, and what, if any, injury resulted from such diversion.  Accordingly, because prong two has not been satisfied, Plaintiff has failed to meet its burden to establish organizational standing.

---

for anything more."  *Id.* at 545.  "The third prong is best seen as focusing on matters of administrative convenience and efficiency, not on elements of a case or controversy."  *Id.*  Thus, Congressional acts, such as those which allow an association to claim monetary damages on behalf of its members, may effectively abrogate the third prong.  *Id.*  The Supreme Court, however, has declined to decide "whether, absent congressional action, the third prong would bar a 'simplified' claim for damages."  *Id* at 544 n.5.  Neither a request for simplified damages, nor monetary damages under a Congressional act, is before the court in this case.

### 2.    *Associational Standing*

Plaintiff further hopes to establish "associational" standing.  *See* ECF 46 (Motion to Dismiss Hearing Transcript) at 13.  In its filings, however, Plaintiff acknowledges that it has not properly pled associational standing:

> At this time Nā Poʻe Kōkua relies upon first party standing[6] in its own right, *supra.* Nā Poʻe Kōkua could also plead associational standing for its member(s), through the filing of an amended complaint, if this Court determines that associational standing is necessary for Nā Poʻe Kōkua to go forward.

ECF No. 43 at PageID.780.  Plaintiff nevertheless appears to ask the court to find that two of the elements of associational standing have been met:

> Nā Poʻe Kōkua did not allege that it had standing to bring claims on behalf of its own members that are also native Hawaiians, but could allege those additional facts in an amended complaint, if necessary. Nā Poʻe Kōkua argues that the other two elements of *Friends of the Earth, supra*, have been met.

*Id.* at PageID.787.

Plaintiff has neither pled nor met the elements of the associational standing test.  As to the first prong, Plaintiff acknowledges that it has not shown how its members would otherwise have stood to sue in their own right.[7]  The

---

[6] Again, when an organization claims to be pleading "first-party party standing," it is considered to be requesting "organizational standing" and these terms are often used interchangeably.  *See Havens Realty Corp.*, 455 U.S. at 375.

[7] In this regard, the Ninth Circuit has explained the difference between intended and incidental third-party beneficiaries, who generally lack standing to enforce a government contract or commitment absent a clear expression to the contrary.  *See Quander v. Rushmore*

(*continued . . .* )

second prong, however, has been established—the deprivation of mortgage loans to native Hawaiians is germane to Nā Poʻe Kōkua, "whose stated purpose is to assist native Hawaiians with housing and related matters."  ECF No. 1 at PageID.11.  But the third prong has not been met.  Plaintiff requests compensatory damages, which cannot be granted under an associational standing doctrine.[8] Although Plaintiff also requests injunctive and declaratory relief, which could be granted under the standard, it is unclear what injunctive or declaratory relief Plaintiff envisions to ensure that its members' injuries are "redressed by a favorable decision."  *Lujan*, 504 U.S. at 561.

---

*Loan Mgt. Services*, 2022 WL 17176901, at *3 (D. Haw. Nov. 23, 2022) (citing internally to *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009)).

[8]  In its 106-page Complaint, Plaintiff alleges, in one paragraph, injuries to its members which are vague and not properly cognizable:

> Nā Poʻe Kōkua claims injuries to property caused by Defendants, based upon legitimate claims of entitlement, or intangible property interests, that are recognized property interests in the State of Hawaii for native Hawaiians, including, but not limited to, lost entitlements, failed commitments, failed recommitments, lost opportunities, sunk out of pocket expenditures, and compounded interest thereon.

ECF No. 1, PageID.17.  Plaintiff further claims an estimated $848,542,083 from lost-opportunity injuries, *id.*, but does not explain how this injury is precisely computed, let alone traceable to Defendant.  Again, these injuries cannot be recovered through associational standing.  Courts "have consistently held that claims for monetary relief necessarily involve individualized proof and thus the individual participation of association members, thereby running afoul of the third prong of the [associational standing] test."  *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990).

## V. **CONCLUSION**

Because Plaintiff has failed to satisfy the elements required for establishing either organizational or associational standing, Plaintiff lacks standing under Rule 12(b)(1).  Accordingly, the court GRANTS Defendant's Motion to Dismiss.  The court DISMISSES Plaintiff's Complaint without prejudice and grants Plaintiff LEAVE TO AMEND.[9]  Plaintiff is granted leave to amend by **April 3, 2023**.  Failure to file an amended complaint by this date will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 16, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Nā Poʻe Kōkua v. Bank of America Corp.*, Civ. No. 22-00238 JMS-WRP, Order Granting Defendant's Motion to Dismiss, ECF No. 29, With Leave to Amend

---

[9]  Although the court is not addressing here the Rule 12(b)(6) challenges raised by Defendant, Plaintiff may buttress, if it can, both its standing arguments, as well as its timeliness arguments in an Amended Complaint when attempting to address challenges already raised by Defendant's present Motion to Dismiss.